**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| CHARLES SMALLWOOD, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 3:25-cv-178 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | Magistrate Judge Poplin |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

# MEMORANDUM OPINION AND ORDER

On June 3, 2026, Magistrate Judge Debra C. Poplin filed her Report and Recommendation ("R&R") [Doc. 20], recommending that the Court affirm the Commissioner of Social Security's decision to deny Social Security Disability Insurance ("SSDI") benefits to Plaintiff Charles Smallwoood. Plaintiff filed a timely Objection [Doc. 21] to the R&R that received a Response [Doc. 22] from the Commissioner. The Court has carefully considered the R&R [Doc. 20], Plaintiff's Objection [Doc. 21], the Commissioner's Response [Doc. 22], and other materials in the record. The Court has reviewed *de novo* the portions of the R&R to which Plaintiff has properly objected. For reasons that follow, Plaintiff's Objection [Doc. 21] will be **OVERRULED**, the R&R [Doc. 20] **ACCEPTED AND ADOPTED,** and Plaintiff's Complaint [Doc. 1] **DISMISSED WITH PREJUDICE.**

## I. FACTUAL AND PROCEDURAL HISTORY

The factual and procedural history of this case is fully set forth in Magistrate Judge Poplin's R&R. [Doc. 20]. Therefore, the Court will keep its own recitation of that history brief. Plaintiff filed for SSDI benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., on

October 19, 2021, alleging a disability onset date of October 19, 2021. [Doc. 7 at 21[1]]. Plaintiff's claims were denied and redenied upon consideration, and he requested a hearing before Administrate Law Judge Joyce Francis (the "ALJ"). [Doc. 20 at 1]. The ALJ determined that Plaintiff was not disabled. [*Id.*]. Plaintiff was subsequently denied an Appeals Council review, making the ALJ's determination the final decision of the Commissioner. [Doc. 7 at 1–7]. Plaintiff filed a Complaint with this Court on April 25, 2025, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). [Doc. 1]. Magistrate Judge Poplin considered briefing from both the Plaintiff and the Commissioner concerning the merits of the Complaint. [*See* Doc. 13; Doc. 19]. Plaintiff raised the following two issues: (1) "[w]hether the ALJ supported with substantial evidence her Residual Functional Capacity finding and her analysis of Dr. Wright's Prior Administrative Medical Finding" and (2) "[w]hether the ALJ supported with substantial evidence her analysis of Dr. Maffeo's Medical Opinion." [Doc. 13 at 1]. Magistrate Judge Poplin concluded that the ALJ had supported both findings and analyses with substantial evidence. [*See generally* Doc. 20].

Plaintiff then filed two objections to the R&R. [*See* Doc. 21]. These objections revolve around the medical opinions of Drs. P. Jeffrey Wright, Jennifer Cortes, and Patricia Maffeo and how the ALJ's relied on those opinions in making her findings about the Plaintiff's mental acuity and ability to work certain jobs. [*See generally id.*]. Plaintiff first contends that the Magistrate Judge erred when she concluded that the ALJ properly considered Dr. Wright's medical opinion and its relationship to the jobs listed in the *Dictionary of Occupational Titles* that could accommodate Plaintiff's residual functional capacity. [*Id.* at 1–3]. Second, Plaintiff argues that the Magistrate Judge erred by finding that the ALJ had adequately explained her level of reliance on

---

[1] For consistency and ease of reference, citations to the transcript [Doc. 7] are to its internal pagination, and *not* to the CM/ECF-stamped document and page number.

Dr. Maffeo's medical opinions. [*Id.* at 3–4]. Plaintiff specifically faults the ALJ for relying on prior summaries of Dr. Maffeo's evaluation instead of specific "pertinent evidence." [*Id.* at 3–4]. As part of his second objection, Plaintiff contends that the Magistrate Judge erred by failing to conclude that the ALJ was required by *Grooms v. Saul*, No. 1:19-0060, 2020 WL 5017108, at *6 (M.D. Tenn. Aug. 25, 2020) "to address evidence for and against its conclusions." [*Id.* at 4]. The Commissioner generally denies these arguments and, in essence, directs the Court to the R&R, which the Commissioner describes as "well reasoned, well supported by law," and responsive to "the arguments brought forth in Plaintiff's briefing." [Doc. 22 at 2]. Having reviewed the R&R, the briefing of the parties, and the record, the Court will overrule Plaintiff's objection.

## II. STANDARD OF REVIEW

When a pretrial matter is dispositive of a party's claim or defense, the district judge may refer the matter to the magistrate judge for a report and recommendation. Fed. R. Civ. P. 72(b)(1); *see* 28 U.S.C. § 636(b)(1)(B). The magistrate judge must recommend a disposition, including, if appropriate, proposed findings of fact. Fed. R. Civ. P. 72(b)(1). The district judge must then "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make *a de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with further instructions. *Id.*

It is well-established that "[a] general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). In the absence of

objection, the district court is not obligated to conduct a *de novo* review of a report and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). Moreover, "the district court need not provide *de novo* review where the objections are 'frivolous, conclusive, or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (*quoting Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). "The parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'" *Id.*

When a magistrate judge recommends affirming an ALJ's decision, a district court must determine whether the magistrate judge correctly concluded that the ALJ's decision was supported by substantial evidence. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 241 (internal quotation marks and citation omitted).

## III. ANALYSIS

As explained above, Plaintiff has filed two objections to the R&R. [Doc. 21]. Plaintiff first argues the Magistrate Judge erred by concluding that the ALJ properly considered Dr. Wright's medical opinion when she only partially adopted it by refusing to conclude (as Dr. Wright had) that Plaintiff could understand detailed information. [*Id.* at 1–3]. Moreover, Plaintiff argues that the ALJ relied on Dr. Wright's opinion in an inconsistent manner during her inquiry to the Vocational Expert ("VE"). [*Id.*]. The Court is unconvinced by these contentions for two reasons. First, the jobs that the ALJ considered in her conversation with the VE could still be worked by Plaintiff even if Dr. Wright's opinion about Plaintiff's cognitive ability was correct. Second, even

if the ALJ did somehow misalign Dr. Wright's opinion with the job titles listed in the *Dictionary*, the ALJ had no duty to accurately align the opinion with the job titles.

Plaintiff next argues the Magistrate Judge erred by finding that the ALJ had adequately explained her level of reliance on Dr. Maffeo's medical opinions. [*Id.* at 3–4]. Plaintiff argues this error resulted from the ALJ's failure to rely on specific "pertinent evidence" and follow *Grooms v. Saul*, No. 1:19-0060, 2020 WL 5017108, at *6 (M.D. Tenn. Aug. 25, 2020) by "address[ing] evidence for and against its conclusions." [*Id.* at 4]. But the ALJ did, in fact, rely on specific evidence when explaining why she chose not to fully credit Dr. Maffeo's opinion. *Grooms* is also irrelevant to the ALJ's treatment of Dr. Maffeo's opinion because this matter was instead governed by 20 C.F.R. § 404.1520c, which the ALJ followed.

**a. The Magistrate Judge did not err by concluding that the ALJ had properly considered Dr. Wright's medical opinion and its relationship to the universe of job titles in the *Dictionary of Occupational Titles* that could accommodate Plaintiff's residual functional capacity.**

In her R&R, the Magistrate Judge found that the ALJ properly considered the medical opinion of Dr. P. Jeffrey Wright and the extent to which it suggests that Plaintiff can consider and remember simple instructions (an ability that has a strong sway over his residual functional capacity). [Doc. 20 at 7]. Plaintiff claims that he "is requesting reconsideration for alignment of the [ALJ's] analysis of Dr. Wright's opinion with the [ALJ's] Step Five finding of available jobs, with the assistance of the only detailed source that the [ALJ] cited to identify these jobs (the [*Dictionary of Occupational Titles*])." [Doc. 21 at 1–2]. This is because, by Plaintiff's lights, the ALJ's refusal to adopt Dr. Wright's "conclusion that Plaintiff 'could understand, remember, and apply simple and detailed information'" was inconsistent with her finding that Plaintiff could work several jobs listed in the *Dictionary of Occupational Titles*. [*Id.* at 2]. However, this Court finds Plaintiff's objection unpersuasive for two reasons: (1) the ALJ did not rely on Dr. Wright's opinion

in a way that was inconsistent with its contents; and (2) the ALJ was not obliged to align Plaintiff's residual functional capacity to the level of reasoning required by the jobs the ALJ declared Plaintiff capable of working.

Firstly, as the Magistrate Judge rightly observes, the ALJ's characterization of Dr. Wright's medical opinion about Plaintiff's ability to understand and apply simple information was not inconsistent with the ALJ's conclusion about the jobs listed in the *Dictionary of Occupational Titles* that Plaintiff could hypothetically keep. In this case, both Dr. Cortes and Dr. Wright made assessments based on a review of Plaintiff's records. [Doc. 7 at 84, 99]. According to Dr. Cortes, Plaintiff exhibits "[d]iminished cognitive abilities" that hinder him "from performing detailed and complex tasks in a consistent manner." [*Id.* at 80]. However, Dr. Cortes emphasized that Plaintiff's mental obstacles were not so severe as to deprive him of "the ability to perform the basic mental demands of unskilled work." [*Id.* at 72]. Consequently, Dr. Cortes concluded that Plaintiff could "understand, remember, and execute simple instructions." [*Id.* at 75].

Dr. Wright's opinion largely mirrored that of Dr. Cortes. Dr. Wright rated Plaintiff's "ability to understand and remember very short and simple instructions" as "Not Significantly Limited," while he rated Plaintiff's "ability to understand and remember detailed instructions" as only "Moderately Limited." [*Id.* at 97]. When he explained these ratings, Dr. Wright stated that Plaintiff "can understand, remember, and apply simple and *detailed* information with lower-level complexity." [*Id.* at 98 (emphasis added)]. In her review of Dr. Cortes's and Dr. Wright's opinions, the ALJ found the former's opinion to be "consistent with evidence of record" regarding Plaintiff's mental capabilities. [*Id.* at 30]. While the ALJ determined that Dr. Wright "found similar limits as" Dr. Cortes did, she also noted that Dr. Wright believed Plaintiff capable of digesting "detailed" information. [*Id.*]. Because the ALJ found Dr. Wright's assertion about Plaintiff's ability to

understand detailed information inconsistent with other parts of the record, including Dr. Cortes's opinion, the ALJ rejected that assertion. [*See id.*]. Thus, the ALJ asked the VE about the set of jobs in the *Dictionary of Occupational Titles* that a hypothetical individual who can only "understand and remember simple instructions" could work. [*Id.* at 56]. In reliance on the VE's answers to this prompt, the ALJ concluded that Plaintiff could work as a linen room attendant, industrial cleaner, and day-work cleaner. [*Id.* at 32].

Plaintiff contends the ALJ erred by failing to ask the VE about hypothetical jobs according to parameters consistent with Dr. Wright's answer—a complaint that ultimately questions whether it was proper for the ALJ to disregard Dr. Wright's claim that Plaintiff could digest detailed information. [*See* Doc. 21 at 2]. The ALJ is required to resolve any conflict between incompatible pieces of evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). When the conflict is between two medical opinions, the ALJ must consider the following factors to resolve that conflict: (1) whether the source of the opinion supports the opinion with evidence and explanation; (2) whether the opinion is consistent with other medical and nonmedical sources; (3) the extent of the treatment relationship between the claimant and the source of the opinion; (4) whether the opinion concerns an area in which the source of the opinion is specialized; and (5) other factors such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c). The first two factors—supportability and consistency, respectively—are the most important. *Id.* §§ 404.1520c(a), (b)(2).

Here, Dr. Wright opined that Plaintiff could understand detailed information, whereas Dr. Cortes opined that he could only understand simple information. Because these two opinions suggest differing levels of cognitive capability, they are at least somewhat inconsistent. *See*

*Talarico v. Comm'r of Soc. Sec.*, 3:24-cv-475, 2026 WL 161406, at *7–9 (E.D. Tenn. Jan. 21, 2026) (affirming an ALJ's finding of a more restrictive residual functional capacity where multiple physicians disagreed about the claimant's ability to understand simple or detailed information). Given that consistency is one of the most important factors for the ALJ to follow, *id.* § 404.1520c(a), the Court concludes the ALJ had substantial evidence to justify partially disregarding Dr. Wright's opinion. *See Mitchell v. Comm'r of Soc. Sec.*, 330 F.App'x 563, 568 (6th Cir. 2009) (holding that the ALJ did not err by disregarding certain medical evidence based on its inconsistency with other evidence in the record). Consequently, the ALJ appropriately limited her questioning of the VE to jobs capable of being performed by those who can "understand and remember simple instructions." [Doc. 7 at 56].

But even if the ALJ should have credited Dr. Wright's opinion that Plaintiff could digest detailed information, it is unclear how that opinion compels the conclusion that Plaintiff cannot work as a linen room attendant, industrial cleaner, and day-work cleaner. Surely, an individual capable of understanding detailed instructions can also digest simple instructions. *See Longworth v. Comm'r of Soc. Sec.*, 406 F.App'x 977, 981 (6th Cir. 2011) (explaining that an ALJ accounted for claimant's impaired cognitive ability "by restricting the hypothetical question [to the VE] to simple work and by excluding complex or detailed jobs."); *Jones v. Comm'r of Soc. Sec.*, No. 20-11851, 2021 WL 4205061, at *4 (E.D. Mich. June 30, 2021) ("Courts in this circuit have routinely found [residual functional capacity] assessments that are more restrictive than the opinion evidence to be supported by substantial evidence."). So, even if the ALJ had concluded Plaintiff could digest detailed information, it still would have been proper for the ALJ to ask the VE about jobs for individuals who could understand simple instructions. *See Longworth*, 406 F.App'x at 981; *Jones*, 2021 WL 4205061, at *4. So, regardless of how one views the propriety of the ALJ's decision not

to fully adopt Dr. Wright's opinion, the way in which the ALJ relied on Dr. Wright's opinion was supported by substantial evidence.

But there is a second reason to overrule Plaintiff's first objection: As the Magistrate Judge points out, the ALJ was not required to align Plaintiff's residual functional capacity with the level of reasoning demanded by possible occupations. [Doc. 20 at 7]. While the ALJ was required to "take administrative *notice* of reliable job information" in the *Dictionary of Occupational Titles*, 20 C.F.R. § 404.1566(d) (emphasis added), the ALJ was not obligated to *rely* on the *Dictionary*'s classifications. *See Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Conn v. Sec. of Health & Human Servs.*, 51 F.3d 607, 609 (6th Cir. 1995)). The Sixth Circuit has, in fact, clarified that an ALJ has no duty to align a claimant's residual functional capacity with the *Dictionary*'s reasoning classifications. *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011). Thus, regardless of how the ALJ could have relied or did rely on the *Dictionary*'s reasoning classifications, Plaintiff has no legitimate basis to complain of any perceived misalignment between those classifications and Plaintiff's residual functioning capacity. Therefore, the Magistrate Judge did not err by concluding the ALJ properly considered Dr. Wright's medical opinion and its relationship to the universe of available jobs in the *Dictionary of Occupational Titles*.

**b. The Magistrate Judge did not err by finding that the ALJ had adequately explained her level of reliance on Dr. Maffeo's medical opinions.**

Plaintiff's second objection is that the Magistrate Judge erred in finding that the ALJ adequately articulated her reasoning as to Dr. Maffeo's medical opinions. Specifically, Plaintiff says the ALJ should have looked at "specific pertinent evidence" rather than prior summaries of Dr. Maffeo's opinions. [Doc. 21, at 3–4]. Plaintiff also contends the ALJ was required by *Grooms v. Saul*, No. 1:19-0060, 2020 WL 5017108 (M.D. Tenn. Aug. 25, 2020) "to address evidence for

and against [her] conclusions," and that the Magistrate Judge erred by not holding her to this standard. [*Id.* at 4]. This objection misses the mark for two reasons.

First, the ALJ did not rely solely on "prior summaries" of Dr. Maffeo's opinions instead of specific facts. [*See* Doc. 20 at 13–14; Doc. 7 at 603–606]. As the Magistrate Judge points out, the ALJ "explicitly relayed" several events and findings from Dr. Maffeo's psychological evaluation. [Doc. 20, at 12–13]. A comparison of the ALJ's analysis to Dr. Maffeo's evaluation confirms this to be the case. [*Compare* Doc. 7, at 28, *with id.* at 603–606]. True, the ALJ's analysis does at times present general summaries of documents within the administrative record, as any analysis of a multi-hundred-page record must. [*See generally id.* at 24–33]. But the ALJ also relies on specific findings from Dr. Maffeo's psychological evaluation that are relevant to assessing Plaintiff's mental acuity, including that: (1) Plaintiff made mistakes with serial threes and sevens; (2) Plaintiff could not spell "world" backwards; (3) Plaintiff had racing thoughts, including occasional thoughts of violence towards himself and others; (4) Plaintiff could not drive because of his vertigo; and (5) Plaintiff claimed to have no friends and avoided interacting with other people aside from his neighbors. [*See* Doc. 7 at 28, 603–606]. To characterize the ALJ's recitation of such granular facts as a mere "summary" is dubious. Instead, a less dubious conclusion is that the Magistrate Judge did not err when she found that the ALJ relied on specific evidence.

Second, Plaintiff's reliance on *Grooms v. Saul*, No. 1:19-0060, 2020 WL 5017108 (M.D. Tenn. Aug. 25, 2020) is misplaced. According to Plaintiff, *Grooms* requires the ALJ "to address evidence for and against its conclusions." [Doc. 21, at 3]. But this assertion strips *Grooms* of its proper context. The portion of *Grooms* that Plaintiff cites addressed whether the ALJ in that case complied with the treating physician rule, "which requires the ALJ to give controlling weight to a treating physician's opinion if that opinion is 'well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" 2020 WL 5017108. Because Dr. Maffeo was a consultative examiner (not a treating physician), the treating physician rule does not apply to her opinion and the guidance of *Grooms* is largely inapposite. [*See* Doc. 7, at 607].

Instead, the ALJ is bound by the requirements of 20 C.F.R. § 404.1520c, which the Court has already listed above. *See supra* Section III.A. When balancing these factors, an ALJ must "provide a coherent explanation of [her] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) and "clearly explain [her] consideration of the opinion and identify the evidence supporting [her] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020). As other courts have put it, the ALJ's analysis must construct "an accurate and logical bridge between the evidence and" the ALJ's conclusion. *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021); *Ward v. Comm'r of Soc. Sec.*, 2:23-cv-75, 2024 WL 7097977, at *5 (E.D. Tenn. July 10, 2024).

The R&R accurately reviewed the ALJ's work under these standards. Indeed, the Magistrate Judge identifies times where the ALJ explains how specific features of Dr. Maffeo's report conflict with or do not support her opinions about Plaintiff's inability to understand instructions, engage in social interactions, and adapt to changes. [*See* Doc. 20, at 11–17]. The Magistrate Judge highlighted how the ALJ found Dr. Maffeo's opinion about Plaintiff's acuity inconsistent with her reported observations about the coherency of Plaintiff's thought process and memory. [*Id.* at 12]. The Magistrate Judge also explained how, in the ALJ's judgment, Dr. Maffeo's claim that Plaintiff had severe difficulty with social interactions conflicted with several pages of her notes that instead indicated Plaintiff could control his anger towards others with

medication and had behaved politely and cooperatively towards other healthcare professionals. [*Id.* at 13–14]. Lastly, the Magistrate Judge drew attention to the ALJ's explanation of how Plaintiff's ability to perform household chores, make plans independent of others, and feed himself undermined Dr. Maffeo's claim that Plaintiff severely struggled with adapting to changing conditions. [*Id.* at 16–17].

In each of these instances, the ALJ "provided a coherent explanation" as to how and why she relied—or did not rely—on Dr. Maffeo's opinion. *White*, 2021 WL 858662, at *21. The ALJ accomplished this by specifically "identify[ing] the evidence supporting" her "consideration of [Dr. Maffeo's] opinion[s]." *Lester*, 2020 WL 8093313, at *14. In other words, the ALJ assembled discrete factual building blocks—that is, specific details in the record—into "an accurate and logical bridge between the evidence and" her refusal to adopt every aspect of Dr. Maffeo's opinions. *Ward*, 2024 WL 7097977, at *5. Thus, the way that the ALJ considered Dr. Maffeo's opinions was supported by substantial evidence. And since the Magistrate Judge also arrived at this conclusion for the same reasons, [Doc. 20, at 11–17], the Court finds good reason to adopt the Magistrate Judge's analysis and conclusions as to Dr. Maffeo's opinions.

## IV. CONCLUSION

For the reasons explained above, Plaintiff's objections [Doc. 21] are **OVERRULED**. The Court agrees with Magistrate Judge Poplin's recommendation to **AFFIRM** the decision of the Commissioner. Accordingly, the Court **ACCEPTS AND ADOPTS** Magistrate Judge Poplin's findings of fact and conclusions of law as articulated in her Report and Recommendation. [Doc. 20]. Plaintiff's Complaint [Doc. 1] is hereby **DISMISSED WITH PREJUDICE.** An appropriate judgment will soon enter.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**